# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

KATRINA TARZIAN and SENIA HARDWICK,
*on behalf of themselves and others similarly situated*,

Plaintiffs,

v.

KRAFT HEINZ FOOD COMPANY

Defendant.

Case No. 1:18-cv-07148

**FIRST AMENDED
CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff KATRINA TARZIAN (herein "Plaintiff TARZIAN") and SENIA HARDWICK (herein "Plaintiff HARDWICK") (collectively, "Plaintiffs"), individually and on behalf of all other persons similarly situated, by their undersigned attorneys, pursuant to this Amended Class Action Complaint against the Defendant, KRAFT HEINZ FOOD COMPANY ("Defendant" or "Kraft Heinz"), allege the following:

### NATURE OF THE ACTION

1.    This is a consumer protection action seeking redress for, and a stop to, Defendant's unfair and deceptive practice of advertising and marketing its Capri Sun beverages as being free of artificial preservatives.  While Defendant's language can vary slightly from flavor to flavor, this is the uniform message conveyed by its labeling.  Below is an example, which represents the beverage as having "No Artificial Coloring, Flavors, or Preservatives":



2.      Defendant's representation that its Capri Sun beverages are free of artificial preservatives is false and deceptive because these contain citric acid, a well-known preservative. This labeling deceives consumers into believing that they are receiving healthier beverages free of artificial preservatives.

3.      While citric acid was once produced naturally—e.g., by squeezing lemons or limes—this is uneconomical in the context of industrialized food production.  Thus, Defendant's citric acid is artificial.

4.      Conscious of consumers' increased interest in more nutritious beverages free of additives and willingness to pay more for products perceived to meet this preference, Defendant misleadingly, illegally, and deceptively seeks to capitalize on these consumer health trends.

5.      Defendant sold and continues to sell beverages with deceptive or misleading labeling. The products encompassed by this action are:

1.  *Capri Sun* Tropical Punch. **Exhibit A**, pg. 1
2.  *Capri Sun* Grape. **Exhibit A**, pg. 2

2

3. *Capri Sun* Strawberry Kiwi. **Exhibit A**, pg. 3
4. *Capri Sun* Fruit Punch. **Exhibit A**, pg. 4
5. *Capri Sun* Orange. **Exhibit A**, pg. 5
6. *Capri Sun* Strawberry. **Exhibit A**, pg. 6
7. *Capri Sun* Wild Cherry. **Exhibit A**, pg. 7
8. *Capri Sun* Lemonade. **Exhibit A**, pg. 8
9. *Capri Sun* Red Berry. **Exhibit A**, pg. 9
10. *Capri Sun* Surfer Cooler. **Exhibit A**, pg. 10
11. *Capri Sun* Pacific Cooler. **Exhibit A**, pgs. 11-12
12. *Capri Sun* Mountain Cooler. **Exhibit A**, pg. 13
13. *Capri Sun* Splash Cooler. **Exhibit A**, pg. 14
14. *Capri Sun* Coastal Cooler. **Exhibit A**, pg. 15
15. *Capri Sun* Organic Fruit Punch. **Exhibit A**, pg. 16
16. *Capri Sun* Organic Apple. **Exhibit A**, pg. 17
17. *Capri Sun* Organic Strawberry Lemonade. **Exhibit A**, pg. 18
18. *Capri Sun* Organic Grape. **Exhibit A**, pg. 19
19. *Capri Sun* Organic Tropical Punch. **Exhibit A**, pg. 20
20. *Capri Sun* 100% Juice: Apple. **Exhibit A**, pg. 21
21. *Capri Sun* 100% Juice: Berry. **Exhibit A**, pg. 22
22. *Capri Sun* 100% Juice: Fruit Punch. **Exhibit A**, pg. 23
23. *Capri Sun* 100% Juice: Grape. **Exhibit A**, pg. 24
24. *Capri Sun* Fruit Refreshers: Awesomely Apple. **Exhibit A**, pg. 25
25. *Capri Sun* Fruit Refreshers: Very Berry Punch. **Exhibit A**, pg. 26
26. *Capri Sun* Fruit Refreshers: Orange Pineapple Tango. **Exhibit A**, pg. 27
27. *Capri Sun* Fruit and Veggie Blends: Apple Sweet Potato Smash. **Exhibit A**, pg. 28
28. *Capri Sun* Fruit and Veggie Blends: Berry Carrot Blast. **Exhibit A**, pg. 29
29. *Capri Sun* Fruit and Veggie Blends: Punch Carrot Craze. **Exhibit A**, pg. 30
30. *Capri Sun* Roarin' Waters: Tropical Fruit. **Exhibit A**, pg. 31
31. *Capri Sun* Roarin' Waters: Berry. **Exhibit A**, pg. 32
32. *Capri Sun* Roarin' Waters: Fruit Punch. **Exhibit A**, pg. 33
33. *Capri Sun* Roarin' Waters: Grape. **Exhibit A**, pg. 34
34. *Capri Sun* Roarin' Waters: Strawberry Kiwi. **Exhibit A**, pg. 35
35. *Capri Sun* Roarin' Waters: Wild Cherry. **Exhibit A**, pg. 36
36. *Capri Sun* Sport: Fruit Frenzy. **Exhibit A**, pg. 37
37. *Capri Sun* Sport: Citrus Rush. **Exhibit A**, pg. 38
38. *Capri Sun* Sport: Grape Blast. **Exhibit A**, pg. 39
39. Any other *Capri Sun* beverage that is represented as containing no artificial preservatives while containing citric acid and/or any other artificial preservatives (individually, a "Product"; collectively, the "Products," which include all sizes of each beverage)

6.    Plaintiffs bring this proposed consumer class action on behalf of themselves and all other persons who, from the applicable limitations period up to and including the present (the "Class Period"), purchased the Products for consumption and not resale.

7.    Defendant markets the Products in a way that is deceptive to consumers under consumer protection laws of Illinois, New York, the other 48 states, and the District of Columbia.

8.    Defendant violates statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent, unconscionable trade and business practices, and false advertising. These statutes are:

1) Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*
2) Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.;*
3) Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*
4) Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*
5) California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*
6) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*
7) Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.;*
8) Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
9) District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*
10) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*
11) Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*
12) Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1*, et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*
13) Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*
14) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*
15) Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*
16) Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*
17) Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*
18) Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*
19) Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.;*
20) Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq,,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*
21) Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*
22) Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;
23) Michigan Consumer Protection Act, § § 445.901, *et seq.;*
24) Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*
25) Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*
26) Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*
27) Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*
28) Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*
29) Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*
30) New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq. ;*
31) New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 *1, et seq.;*
32) New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 *1, et seq.;*

*33)* New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.;*

*34)* North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*

*35)* North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*

*36)* Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*

*37)* Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*

*38)* Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*

*39)* Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*

*40)* Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*

*41)* South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*

*42)* South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.;*

*43)* Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*

*44)* Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et seq.;*

*45)* Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*

*46)* Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*

*47)* Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*

*48)* Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*

*49)* West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*

*50)* Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*

*51)* Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

## JURISDICTION AND VENUE

9. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative Class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

10. This court has personal jurisdiction over Defendant because the Products are advertised, marketed, distributed, and sold throughout Illinois. Defendant engages in the wrongdoing alleged in this Complaint throughout Illinois. Defendant is authorized to do business in Illinois, and Defendant has sufficient contacts with Illinois and/or otherwise has intentionally availed itself of the markets in Illinois, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant's

activity in Illinois is substantial, not isolated, and Illinois is one of Defendant's two principal places of business.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (b), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.


## PARTIES

*Plaintiffs*

12.     Plaintiff TARZIAN is, and at all times relevant hereto has been, a citizen of Illinois and a resident of Cook County. On October 3, 2018, Plaintiff TARZIAN purchased a 10-pouch pack of Capri Sun Fruit Punch for the premium price of $2.22 at a Walmart on Touhy Avenue in Niles, IL.

13.     Plaintiff TARZIAN purchased the Product relying on Defendant's representations on the Product packaging. As a result of Defendant's deceptive conduct as alleged herein, Plaintiff TARZIAN was injured when she paid money for a beverage that did not deliver the qualities it promised and misled her as to its contents. She paid the above sum on the assumption that she was purchasing an artificial preservative-free beverage. She would not have been willing to pay the sum she paid had she known it was mislabeled. Defendant's labeling misled Plaintiff TARZIAN into believing that she was purchasing a beverage without artificial preservatives. Defendant delivered a Product with significantly less value than was warranted by its representations, thereby depriving her of the benefit of her bargain and injuring her in an amount up to the purchase price. Damages can be calculated through expert testimony at trial.

14.     Plaintiff HARDWICK is, and at all times relevant hereto has been, a citizen of New York State and a resident of Queens County. On March 1, 2018, Plaintiff HARDWICK purchased

6

a 10-pouch pack of Capri Sun Fruit Refreshers Awesome Apple for the premium price of $2.99 at a Key Foods supermarket on Skillman Avenue in Woodside, Queens.

15. Plaintiff HARDWICK purchased the Product relying on Defendant's representations on the Product packaging. As a result of Defendant's deceptive conduct as alleged herein, Plaintiff HARDWICK was injured when she paid money for a beverage that did not deliver the qualities it promised and misled her as to its contents. She paid the above sum on the assumption that she was purchasing an artificial preservative-free beverage. She would not have been willing to pay the sum she paid had she known it was mislabeled. Defendant's labeling misled Plaintiff HARDWICK into believing that she was purchasing a beverage without artificial preservatives. Defendant delivered a Product with significantly less value than was warranted by its representations, thereby depriving her of the benefit of her bargain and injuring her in an amount up to the purchase price. Damages can be calculated through expert testimony at trial.

***Defendant***

16. Defendant KRAFT HEINZ FOOD COMPANY is a limited liability company organized under the laws of Pennsylvania with its principal places of business at 1PPG Place, Pittsburgh, PA 15222 and 7600 200 E. Randolph St., Chicago, IL 60601. Defendant's registered agent is CT Corporation System, 208 S Lasalle St, Suite 814 Chicago, IL 60604.

17. Defendant develops, markets Products throughout the United States. The Products are available at numerous retail and online outlets, including Walmart, Key Foods, and Amazon.com.

18. The advertising for the Products, relied upon by Plaintiffs, is approved by Defendant and its agents, and is disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. The advertising for the Products is designed to

encourage consumers to purchase the Products, and misleads the reasonable consumer, i.e. Plaintiffs and the Class. Defendant owns, manufacture and distributes the Products and authorizes the unlawful, fraudulent, unfair, misleading and/or deceptive labeling and advertising for the Products.

## FACTUAL ALLEGATIONS

### Defendant's Artificial Preservative-Free Representations Are False And Misleading To A Reasonable Consumer

19.     Defendant misleads consumers into believing that the Products contain no artificial preservatives with its false labeling claims to this effect.  However, the Products actually contain citric acid, whose preservative function is well-documented.

20.     Additionally, Defendant's "Sport" line of Products contains trisodium citrate and tripotassium citrate, which are also artificial preservatives (the "citrates").

21.     The FDA defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."  21 C.F.R. § 101.22(a)(5).

22.     The citric acid and citrates in the Products have precisely this effect.

23.     The MacMillan Dictionary defines "tends" as "to usually do a particular thing," as in "He tends to exaggerate" or "The gym tends to get very busy at around six o'clock."[1]  The scientific evidence and FDA statements cited below establish that citric acid and ascorbic acid both tend to prevent or retard the deterioration of food. This remains the case regardless of the subjective purpose for which this substance is added to the Product.

---

[1] http://www.macmillandictionary.com/us/dictionary/american/tend

24.     Citric acid and the citrates do not fall into any of the regulatory exemptions from the definition of a preservative.

25.     The FDA expressly classifies citric acid as a preservative in its <u>Overview of Food Ingredients, Additives, and Colors</u>, on the FDA's website:

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| **Preservatives** | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, **citric acid**, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

http://www.fda.gov/Food/IngredientsPackagingLabeling/FoodAdditivesIngredients/ucm094211.htm.

26.     Citric acid's nature as a preservative is also acknowledged by insiders in the preservative manufacturing and distribution industries. FBC Industries, Inc. a producer and supplier of FCC grade Citric Acid additives, acidulants, buffering agents and preservatives for the food and beverage industry describes citric acid's function: "Citric acid is the most commonly used acidulant in the industry. As a food additive or food grade product, citric acid is used as a flavoring and preservative. The buffering properties of citrates are used to control pH and flavor."[2]

27.     The FDA's Warning Letter to the manufacturer of the Chiquita brand "Pineapple Bites with Coconut" and "Pineapple Bites" dated October 6, 2010 further confirms that citric acid is a preservative:

---

[2] http://www.fbcindustries.com/Citric_Acid.aspx

> "The 'Pineapple Bites' and 'Pineapple Bites with Coconut' products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservative ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22."

*See* **Exhibit B**, FDA Warning Letter dated October 6, 2010 (emphasis added).

28.　　As described above in ¶¶ 20, 22, a preservative as defined by the FDA is a substance that "tends" to prevent or retard the deterioration of foods. Thus, it is not necessary that it function as a preservative in every single instance for it to qualify as a preservative according to the FDA's definition, so long as this is its general tendency.

29.　　However, citric acid and the citrates do as a matter of fact function as preservatives in the Products.

30.　　This is confirmed by Dr. Marc Meyers, a food scientist with a Ph.D., nearly thirty years, of experience in the field, multiple patents, and published work. *See* **Exhibit C**, Declaration of Dr. Marc Meyers ("Meyers Decl.") ¶¶ 3-20.

31.　　Dr. Meyers observes that citric acids functions as a preservative in a number of ways.

32.　　Citric acid is an anti-microbial. It kills microbes by reducing the pH of products to which it is added. Meyers Decl. ¶ 23. It can kill microbes directly by penetrating the cell walls of microorganisms. Meyers Decl. ¶ 28

33.　　Citric acid also serves as a preservative by functioning as a sequestrant, removing compounds and elements from their environment so as to slow the degradation of food and beverages. Meyers Decl. ¶ 29.

34.     Citric acid's effects include "delaying spoilage from bacteria, mold, fungi, and yeast; delaying changes in color, flavor, texture; and delaying browning and rancidity" over the shelf-life of a food or beverage product.  Meyers Decl. ¶ 26.

35.     Citric acid also functions as an antioxidant by sequestering metal ions (chelation), which prevents food deterioration and retards microbial growth.  Meyers Decl. ¶ 29.

36.     Citric acid serves as a preservative by functioning as an acidity regulator and acidulant.  Meyers Dec. ¶ 22, 27.

37.     Dr. Meyers observes that while citric acid can also be employed to impart taste, a greater quantity of it is required to impart taste than to preserve foods and beverages.  The preservative effects of citric acid may be reduced at lower levels, but it will still be present. Meyers. Decl. ¶¶ 25-26.

38.     Thus, Defendant cannot argue that it includes citric acid in the Products merely to impart added taste, because the quantities required to impart taste are more than sufficient to function as preservatives.  Even if imparting taste is Defendant's primary motivation for including citric acid, this subjective motivation has no bearing on its objective functioning.

39.     Dr. Meyers also observes that citric acid functions as a preservative in the Products specifically.  Dr. Meyers states:

   a.  Citric acid functions as a preservative in the Capri Sun beverage products by serving as an acidulant, lowering their pH-level and thereby combatting microorganisms.
   b.  Citric acid functions as a preservative in the Capri Sun beverage products by serving as an indirect antioxidant.
   c.  Citric acid functions as a preservative in the Capri Sun beverage products by infiltrating and then weakening or killing microorganisms through direct antimicrobial effect. Regardless of whether this is the primary purpose for which it is added to the Capri Sun beverage products, it still functions as a preservative by direct microbial effect, lowering pH levels, and acting as a sequestrant and indirect antioxidant.
   d.  Citric acid functions as a preservative in the Capri Sun beverage products through sequestration, which prevents oxidation and impedes microbial growth.

11

    e.  Citric acid serves these functions regardless of whether it is also being used as a flavorant.

    f.  The fact that Defendant may also employ other means of preserving the CapriSun beverage products, like a hermetic seal, does not change citric acid's function as a preservative.

Meyers Decl. ¶ 33

## The Citric Acid In The Products Is Artificial

    40.    While citric acid was directly extracted from lemons and other fruits in the 19th Century, this does not describe the production of citric acid today. Today, it is manufactured industrially, usually through the process of fermentation, which is defined as "[a]ny of a group of chemical reactions induced by microorganisms or enzymes that split complex organic compounds into relatively simple substances."[3] Thus, citric acid is an artificial, chemical preservative, not a natural one.

    41.    Numerous commentators have observed that the citric acid in today's industrially produced foods is highly artificial:

> While it's naturally present in citrus fruits, it's not economical to use fruit-derived citric acid as a food additive. Most citric acid found in food is a commodity chemical produced by feeding simple carbohydrates to Aspergillus niger mold and then processing the resulting fermented compound. Calcium hydroxide and sulfuric acid are often used in processing. "We would all love to think that citric acid comes from an orange, but it does not," says Mary Mulry, PhD, a food scientist and founder of consulting firm FoodWise. "It comes from a chemical process." Pfizer was the leading producer of citric acid for decades. Today, leaders include Archer Daniels Midland Co. and Cargill.

> Lisa Marshall, *The New Hope Network*[4]

> Lemons and limes are the best sources of citric acid, followed by other citrus fruits and strawberries. Up until the early 1900s, 90 percent of the world's citric acid came from Italy, where manufacturers extracted it from fresh fruits. Then researchers discovered that fungi produced citric acid during fermentation and that this process yielded a larger amount at a lower cost. A variety of yeasts and molds make citric acid, but Aspergillus niger, a mold

---

[3] http://www.thefreedictionary.com/fermentation

[4] http://www.newhope.com/ingredients-general/is-citric-acid-natural

that belongs in the same family as penicillin, is used for large-scale production.

Sandi Busch, *Livestrong.com*[5]

Although citric acid is found in high concentrations in many citric fruits, it is not economical to extract the acid from fruit for industrial use. Plus, the demand for citric acid far outweighs the supply of citrus fruit available.

The ability of the mold Aspergillus niger to produce citric acid as a byproduct of metabolism was discovered by American food chemist James Currie in 1917. The process of cultivating Aspergillus niger and allowing it to metabolize sucrose or glucose to yield citric acid proved efficient and inexpensive. Once it was possible to produce a seemingly endless supply of citric acid, companies like Pfizer and Citrique Belge began producing it on an industrial scale. This same technique is used to produce citric acid today.

Bethany Moncel, *the spruce Eats*[6]

Naturally, citric acid appears in lemon, limes and many other sour-tasting fruit. Have you ever watched the face of a baby when it sucks on a lemon slice for the first time? I always get a kick out of it, watching it pull faces and doing it over and over, not getting enough of it. The food industry makes full use of our cravings for that crisp and tangy taste and adds it en-masse to fruit drinks, spaghetti sauce, baby food, iced tea and everything else that needs a flavour improvement. Of course the industry doesn't press lemon juice; it creates this stuff artificially.

Every year worldwide more than 600,000 tons of crystalline citric acid are produced, while the entire harvest of lemons and limes is only 120,000 tons.

Siegfried Gursche, MH, *alive.com*[7]

**How is Citric Acid made?**

Citric acid is found naturally in citrus fruits, but producing citric acid from citrus fruits is very expensive and the demand for citric acid is greater than the available supply of citrus fruits. Therefore, when you see citric acid on a product label, you can be sure that it is a powder that was made from the fermentation of sugars.

A culture of Aspergillus niger (a fungus commonly used in the pharmaceutical industry) is fed with sugar and metabolizes it into a liquid solution. The solution is mixed with lime (calcium hydroxide) which causes citrate salt to come out of the solution (precipitate). The citrate salt is then treated with sulfuric acid to make useable citric acid.

---

[5] https://www.livestrong.com/article/477815-how-is-citric-acid-made-where-does-it-come-from/

[6] https://www.thespruceeats.com/what-is-citric-acid-1328465

[7] *https://www.alive.com/health/is-citric-acid-truly-safe/*

The sugars that are used for the citric acid can be derived from cane sugar, corn or wheat. In the United States, citric acid is most often derived from corn since it is a cheap, subsidized crop. In South America cane sugar is often used due to the low sugar prices, while in Europe wheat sweeteners are commonly used.

Rabbi Sholom Ber Hendel, *www.ok.org*[8]

**Plaintiffs' Claims Are Consistent With Federal Law**

42.     Defendant's deceptive misrepresentations violate the FDCA, which provides that "[a] food shall be deemed misbranded. If its labeling is false or misleading in any particular." 21 U.S.C. § 343 (a)(1).

43.     Plaintiffs' claims are not preempted by the FDCA because the definition of "preservative" as used herein is consistent with that of the FDA (see above).  Moreover, FDA regulations specifically note that claims like "contains no preservatives" are non-nutritive claims that that are not governed by 21 C.F.R. § 101.13.  *See* 21 C.F.R. § 101.65(b)(2).  Since the FDA has not issued specific standards governing when "no preservative" claims are either true or false, such representations fall outside the ambit of FDA regulations.  Accordingly, Plaintiff's claim cannot possibly be preempted.  *See Bimont v. Unilever U.S., Inc.*, No. 14-CV-7749 (JPO), 2015 U.S. Dist. LEXIS 119908, at *6 (S.D.N.Y. Sep. 9, 2015) ("preemption does not preclude a state-law claim if the state requirement is outside the scope of the relevant federal requirements").

**Plaintiffs And Class Members Were Injured As A Result Of Defendant's Misrepresentation**

44.     Plaintiffs and Class members were injured when Defendant denied them the full benefit of their bargain. They paid money for Products that they were led to believe were free of artificial preservatives but then received Products that were laden with them and so had

---

[8] http://www.ok.org/kosherspirit/spring-2015/what-is-citric-acid/

significantly less value. Plaintiffs and Class members were thus deprived of the benefit of their bargains. Plaintiffs and Class members would not have purchased the Products, or would only have been willing to pay less for them, had they known the truth about them. Plaintiffs and Class members were injured in an amount up to the purchase price, the difference between the actual value of the Products and the value of the Products as misrepresented to them by Defendant, to be determined by expert testimony at trial.

45. By representing that the Products contain no artificial preservatives, Defendant seeks to capitalize on consumers' preference for healthier foods and drinks with fewer additives, and the association between these products and a wholesome way of life.

46. American consumers are increasingly seeking out and purchasing foods that they perceive are principally made of ingredients that are healthful and nutritious.[9]

47. Consumers are willing to pay more for less processed products with no additives because of this association as well as the perceived higher quality, health, and safety benefits associated with preservative-free foods.

48. The marketing research firm Mintel reports that more and more Americans are concerned with avoiding foods containing preservatives:

> Foods bearing "free-from" claims are increasingly relevant to Americans, as they perceive the products as closely tied to health. New research from Mintel reveals that **84 percent of American free-from consumers buy free-from foods because they are seeking out more natural or less processed foods**. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent).

---

[9] Nancy Gagliardi, Consumers Want Healthy Foods—And Will Pay More for Them, FORBES (Feb. 18, 2015, 11:30 AM), http://goo.gl/A7Z5WN (last visited 01/02/2018) (88% of respondents willing to pay more for healthier foods); see INT'L FOOD INFO. COUNCIL FOUND., WHAT'S YOUR HEALTH WORTH?: FOOD & HEALTH SURVEY 2015, at 42 (2015), http://goo.gl/4g5wNb.

Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent).[10]

49.    Alternet.org reports on research showing that most Americans are prepared to pay a premium price for healthier options:

> Not only are consumers increasingly seeking out wholesome foods, they are willing to pay a premium for them. According to Nielsen's 2015 Global Health & Wellness Survey that polled over 30,000 people online, 88 percent of Americans are willing to pay more for healthier foods. Global sales of healthy food products are estimated to reach $1 trillion by 2017, according to Euromonitor.

> When it comes to what consumers will be seeking out more of over the coming year, it may amount to single word. "Just think of the word no," Seifer said. "No preservatives, no additives, no growth hormones."[11]

50.    Given that health-minded consumers place a premium on feeds that purport to be free of preservatives, they place an even higher premium on foods that purport to be free of artificial preservatives.

51.    *See Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) ("the issue of 'price premium' was relevant because it showed that Plaintiffs paid more than she would have for the good but for the deceptive practices of the defendant-sellers"); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097, at *51-52 (S.D.N.Y. Aug. 11, 2016) ("[I]n his Complaint, Plaintiff seeks monetary damages on the grounds that he 'would not have paid the premium price he paid' to buy the Products had he 'known the truth.'…Case law makes clear that this is sufficient at the motion-to-dismiss phase for a § 349 claim to survive."); *Koenig v. Boulder Brands, Inc*., 995 F. Supp. 2d 274, 288-89 (S.D.N.Y. 2014) (Plaintiffs claim that, but for Defendant's "unfair and deceptive practices," they—and the putative class—would not have purchased, or paid a price premium for, Smart Balance. Compl. ¶¶ 7, 81. Indeed, Plaintiffs

---

[10] http://www.mintel.com/press-centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed
[11] http://www.alternet.org/food/8-food-trends-watch-2016

claim that they paid price premiums specifically 'based on Defendant's misrepresentations,' and allege that they deserve damages in the amount of either the purchase prices, or the price premiums that they paid for Smart Balance. Id. ¶ 81. Accordingly, the Court finds that Plaintiffs have adequately alleged injury under GBL § 349…")

**Defendant's Misrepresentations Were Material To, And Would Be Reasonably Relied Upon By, Reasonable Consumers**

52.     Plaintiffs and Class members reasonably relied on Defendant's false and/or misleading representations that the Products were free of artificial preservatives.

53.     At the point of sale, Plaintiffs and Class members did not know, and had no reason to know, that the Products were misbranded and misleading as set forth herein, and would not have bought the Products had they known the truth about them.

54.     A representation that a product has no preservatives is material to a reasonable consumer when deciding to purchase it. Plaintiffs did, and a reasonable consumer would, attach importance to whether Defendant's Products were free of artificial preservatives because it is common knowledge that consumers prefer to avoid foods with unhealthy additives (see consumer behavior research above).  Defendant would not have included these representations on the Product labels if this was not going to influence consumer behavior.

**Defendant Has An Intent To Mislead**

55.     Defendant knew that its artificial preservative-free claims are misleading.

56.     Upon information and belief, Defendant retains food scientists who can apprise it of the preservative properties and artificial nature of its citric acid.

57.     Given the premium that consumers attach to preservative-free foods, discussed above, Defendant has a natural interest in misleading consumers as detailed above, as its

17

deceptions and misleading omissions provide a clear marketing advantage over competitors that do not engage in such deceptive conduct.

## CLASS ACTION ALLEGATIONS

58.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons or entities who made retail purchases of Products in the United States during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the Nationwide Class").

In the alternative, Plaintiff TARZIAN seeks to represent a Class consisting of:

> All persons or entities who made retail purchases of the Products in Illinois during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the Illinois Class").

Also in the alternative, Plaintiff HARDWICK seeks to represent a Class consisting of:

> All persons or entities who made retail purchases of the Products in New York during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the New York Class").

59.     The proposed Classes exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, any entity in which it has or has had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

60.     Plaintiffs reserve the right to revise Class definitions based on facts learned in the course of litigating this matter.

61.     This action is proper for class treatment under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure. While the exact number and identities of other Class members are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that there are

millions of Class members. Thus, the Class members are so numerous that individual joinder of all Class members is impracticable.

62.     Common questions of law and fact arise from Defendant's conduct described herein. Such questions are common to all Class members and predominate over any questions affecting individual Class members. These include:

a.    whether claiming that the Products are free of artificial preservatives when they contain industrially manufactured citric acid (and in some cases additional citrates) is false and misleading;

b.    whether Defendant deprived Plaintiffs and Class members of the benefit of their bargains because the Products purchased had less value than what Defendant warranted;

c.    whether Defendant must disgorge any and all profits it has made as a result of its misconduct; and

d.    whether Defendant should be barred from marketing the Products as free of artificial preservatives.

63.     Plaintiffs' claims are typical of those of the Class members because Plaintiffs and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiffs and Class members purchased Defendant's Products and sustained similar injuries arising out of Defendant's conduct in violation of Federal law, Illinois law, New York law, and the laws of the other 48 states and the District of Columbia.   Defendant's unlawful, unfair, and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Classes were caused directly by Defendant's unfair and deceptive practices. In addition, the factual underpinning of Defendant's misconduct is

common to all Class members and represents a common thread of misconduct resulting in injury to all Class members. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of Class members and are based on the same legal theories.

64.     Plaintiffs will fairly and adequately represent and pursue the interests of the Classes and have retained competent counsel experienced in prosecuting class actions. Plaintiffs understand the nature of their claims herein, have no disqualifying conditions, and will vigorously represent the interests of the Class members. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class members.

65.     Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the Class members. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action. Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for them.

66.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual Class member are too small to make it economically feasible for an individual Class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

67.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refuses to act on grounds

generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

68.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

69.     The prosecution of separate actions by individual Class members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all Class members, although certain Class members are not parties to such actions.

70.     Defendant's conduct is generally applicable to the Classes as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

## CAUSES OF ACTION

## COUNT I

**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1 *et seq.*)**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia)**

71.     Plaintiffs reallege and incorporate by reference the allegations contained in all preceding paragraphs of this Complaint and further allege as follows:

72.     The Illinois Consumer Fraud and Deceptive Business Practices Act (the "Act") prohibits as a deceptive act or practice "the use or employment of any deception, fraud, false

pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact." 815 ILCS 505/2.

73.     815 ILCS 505/2 also provides that this includes "represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have" as described by the Illinois Uniform Deceptive Trade Practices Act. 815 ILCS 510/2.

74.     The Act provides that "[a]ny person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person." A court has the discretion to "award actual economic damages or any other relief which the court deems proper." 815 ILCS 505/10a(a). A court may also "grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party." 815 ILCS 505/10a(c).

75.     A plaintiff must allege five elements in order to state a claim under the Act: (1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) the damages were proximately caused by the defendant's deception. *Blankenship v. Pushpin Holdings, LLC*, 157 F. Supp. 3d 788, 792 (N.D. Ill. 2016).

76.     Plaintiffs' claims satisfy element 1 of the Act because Defendant engaged in a deceptive act when it represented that the Products were free of artificial preservatives even though they contained industrially manufactured citric acid.

77.     Plaintiffs' claims satisfy element 2 of the Act because Defendant intended that Plaintiffs and Class members believe that the Product was artificial preservative-free and to purchase it in reliance on this belief.

78.     Plaintiffs' claims satisfy element 3 of the Act because the deception occurred in the context of a commercial transaction.

79.     Plaintiffs' claims satisfy element 4 of the Act because Plaintiffs sustained actual damages when they paid money for a good that was substantially less valuable than was warranted to them.  *See Su Yeun Kim v. Carter's Inc*., 598 F.3d 362, 365 (7th Cir. 2010) ("In the less typical case of a private ICFA action brought by an individual consumer, actual loss may occur if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'") (quoting *Mulligan v. QVC, Inc*., 888 N.E.2d 1190, 1197-98 (Ill. App. Ct. 2008)).

80.     Plaintiffs' claims satisfy element 5 of the Act because Defendant's deception was the proximate cause of their damages.  Plaintiffs would not have purchased the Product had they known it contained artificial preservatives.  Thus, it was only Defendant's representation to the contrary that caused them to purchase the Products and suffer the resultant injury.

81.     Accordingly, Plaintiffs bring this claim under the Act and request: 1) monetary damages in an amount to be determined by expert analysis at trial, 2) punitive damages, 3) restitution for monies wrongfully obtained, 4) disgorgement of ill-gotten revenues, 4) declaratory relief, 5) injunctive relief enjoining Defendant from disseminating that its Products contain no artificial preservatives, 6) reasonable attorneys' fees, and 7) any other relief deemed appropriate by the Court.

**COUNT II**

**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**
**(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

**(brought on behalf of the New York Class)**

82.     Plaintiff HARDWICK realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

83.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

84.     Under the NY GBL § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 … claims, it was error. Justifiable reliance by the plaintiffs is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

85.     Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

86.     The practices employed by Defendant, whereby it advertises, promotes, and markets its Products as free of artificial preservatives is unfair, deceptive, misleading, and in violation of the NY GBL § 349.

87.     Defendant's business act and practices and/or omissions as alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming

24

public from those who engage in unconscionable, deceptive, and unfair acts or practices in the conduct of any business, trade, or commerce.

88.    Defendant's Practices described throughout this Complaint, were specifically directed to consumers and violate the NY GBL § 349 for, *inter alia*, the following reasons:

        a.    Defendant misrepresents or misleadingly advertises that the Products are free of artificial preservatives with an intent to cause Plaintiff and Class members to believe that they are a healthy alternative in comparison to competitors;

        b.    Defendant caused Plaintiff HARDWICK and Class members to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

        c.    Defendant made material representations and statements of fact to Plaintiff and Class members that resulted in them reasonably believing the represented or suggested state of affairs to be other than what they actually were.

89.    The practices employed by Defendant, whereby Defendant advertises, promotes, and markets its Products as free of artificial preservatives are unfair, deceptive, and misleading and are in violation of NY GBL § 349.

90.    Under the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices is malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

91.    Defendant's actions impact the public interest because Plaintiff was injured in exactly the same way as millions of others purchasing the Products as a result of and Defendant's generalized course of deception.

92.     The foregoing deceptive acts and practices proximately caused Plaintiff HARDWICK and New York Class members to suffer actual damages in the form of, *inter alia*, monies spent to purchase the Products. Plaintiff and Class members are entitled to recover compensatory damages, statutory damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems appropriate. Damages can be calculated through expert testimony at trial.

93.     Defendant should be enjoined from labelling the Products as free of artificial preservatives pursuant to NY GBL § 349.  Plaintiff HARDWICK, on behalf of herself and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

## COUNT III

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350 (FALSE ADVERTISING LAW)

### (brought on behalf of the New York Class)

94.     Plaintiff HARDWICK realleges and incorporates by reference the allegations contained in all preceding paragraphs and further allege as follows:

95.     Plaintiff HARDWICK brings this claim individually, as well as on behalf of members of the New York Class, for violations of NY GBL § 350.

96.     Alternatively, should the Court not certify the proposed Nationwide Class, Plaintiff HARDWICK brings this claim individually and on behalf of the members of the New York Class for violations of NY GBL § 350.

97.     Defendant has been and/or is engaged in the "conduct of … business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

98.     New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

99.     Defendant caused to be disseminated throughout New York and the United States, through advertising, marketing and other publications, statements that were untrue and/or misleading.

100.    Defendant's affirmative misrepresentations that the Products do not contain artificial preservatives are material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the Products were, and continue to be, exposed to Defendant's material deceptions.

101.    Defendant has violated N.Y. Gen. Bus. Law § 350 because its artificial preservative-free representations were material to and likely to deceive a reasonable consumer.

102.    Plaintiff HARDWICK and Class members have suffered an injury, including the loss of money or property, as a result of Defendant's false and misleading advertising.

103.    Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiffs and Class members seek monetary damages (including actual damages and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a(1)), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## COUNT IV

## COMMON LAW FRAUD

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia)**

104.    Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs and further alleges as follows:

105.    Defendant intentionally makes materially false and misleading representations regarding the nature of the Products.

106.    Plaintiffs and Class members reasonably relied on Defendant's false and misleading representations. They did not know, and had no reason to know, that the Products contain artificial preservatives.  They would not have purchased the Products had they known Defendant's representations were false.

107.    Defendant knew and intended that Plaintiffs and Class members would rely on its misrepresentations.

108.    Plaintiffs and Class members have been injured as a result of Defendant's fraudulent conduct.

109.    Defendant is liable to Plaintiff and Class members for damages sustained as a result of Defendant's fraud.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly situated, seek judgment against Defendant, as follows:

a. An Order that this action be maintained as a class action, appointing Plaintiffs as representatives of the Nationwide Class;

b. In the Alternative, an Order appointing Plaintiff TARZIAN as representative of the Illinois Class and Plaintiff HARDWICK as representative of the New York Class;

c. An Order appointing the undersigned attorney as Class Counsel in this action;

d. Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

e. All recoverable compensatory and other damages sustained by Plaintiffs and Class members;

f. Actual and/or statutory damages for injuries suffered by Plaintiffs and Class members in the maximum amount permitted by applicable law;

g. An order (i) requiring Defendant to immediately cease their wrongful conduct as set forth in this Complaint; (ii) requiring Defendant to engage in a corrective advertising campaign; and (iii) requiring Defendant to reimburse Plaintiffs and all Class members, up to the amounts paid for the Products;

h. Statutory pre-judgment and post-judgment interest on any amounts;

i. Payment of reasonable attorneys' fees and costs; and

j. Such other relief as the Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of themselves and all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.

Dated: March 7, 2019

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

By: _____*/s/ C.K. Lee*_____

C.K. Lee, Esq. (#2903557)
73 West Monroe Street
Chicago, IL 60603
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*