UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KATRINA TARZIAN and SENIA HARDWICK, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 18 C 7148 |
| KRAFT HEINZ FOODS COMPANY, | ) ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant Kraft Heinz Foods Company's ("Kraft") motion to dismiss Plaintiffs Katrina Tarzian and Senia Hardwicks' (collectively, "Plaintiffs") class-action complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants the motion.

## BACKGROUND

For purposes of this motion, the Court accepts as true the following facts from the amended complaint. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). All reasonable inferences are drawn in Plaintiffs' favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Kraft is a limited-liability company organized under the laws of Pennsylvania with its principal places of business in Pittsburg and Chicago. It is a large-scale food manufacturer that markets to all states, including Illinois and New York. Kraft produces "Capri Sun" beverages in a wide variety of flavors. Plaintiff Katrina Tarzian ("Tarzian") is an Illinois citizen and a resident of Cook County. Plaintiff Senia Hardwick ("Hardwick") is a citizen of New York State and a resident of Queens County.

Plaintiffs Tarzian and Hardwick both purchased 10-packs of Capri Sun beverages bearing a label stating the products contain "no artificial preservatives." Plaintiffs allege these claims are "deceptive and misleading," as Capri Sun beverages contain citric acid, a preservative alleged to be artificially produced on an industrial scale.

Specifically, Plaintiffs allege that citric acid can be produced in several ways. Until the early 1900s, citric acid was mainly produced by extraction from fresh fruits, such as lemons and limes. In 1917, researcher James Currie discovered that citric acid could be produced by "cultivating Aspergillus Niger and allowing it to metabolize sucrose or glucose to yield citric acid." Plaintiffs do not specifically allege that Kraft uses citric acid produced through Aspergillus Niger fermentation; rather, they allege that it is more economically viable to produce citric acid for industrial use through this

fermentation process. They further allege that Capri Sun contains industrially produced citric acid.

As a result of Kraft's allegedly misleading labeling, Plaintiffs allege that they sustained an injury by being denied the benefit of their bargain. They assert that they would not have purchased the Capri Sun beverages had they known that the drinks contained citric acid.

Based on these allegations, Plaintiffs filed their first amended class action complaint on March 03, 2019. Count I asserts violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") and seeks monetary damages and injunctive relief on behalf of a nationwide class ("nonresident Plaintiffs").[1] 805 ILCS §§ 505/1 *et seq.* Count II asserts violations of New York's Deceptive and Unfair Trade Practices Act and seeks injunctive relief on behalf of a New York class under New York's General Business Law ("NY GBL") § 349. Count III asserts violations of New York's False Advertising Law and seeks monetary damages on behalf of the New York

---

[1] Count I asserts claims only on behalf of a nationwide class. Although Plaintiff Tarzian is named in the complaint, there are no counts asserting claims on her behalf or on behalf of any other Illinois plaintiff. *Compare Count I with Counts II & III* (asserting claims on behalf of Plaintiff Hardwick individually, as well as on behalf of members of the New York class). To the extent Plaintiffs attempt to assert claims under the laws of the 50 other states, they fail to state a cognizable claim. Plaintiffs' empty assertion that the laws of other states are substantively like Illinois law is insufficient to meet the pleading standards for fraud claims. *Spector v. Mondelez Int'l Inc*., 178 F. Supp. 3d 657, 664–65 (N.D. Ill. 2016) ("A complaint alleging a violation of consumer fraud must be plead with . . . particularity and specificity."). The Seventh Circuit has made clear that actions such as the one plaintiff proposes are disfavored. *In re Bridgestone/Firestone, Inc*., 288 F.3d 1012, 1015 (7th Cir. 2002) ("No class action is proper unless all litigants are governed by the same legal rules.")

class and Plaintiff Hardwick. On March 21, 2019, Defendants moved to dismiss all three counts under Federal Rule of Civil Procedure 12(b)(6).

## **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs need not provide detailed factual allegations but must provide enough factual support to raise their right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that contains factual allegations that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id*. at 677 (internal quotations omitted). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the

4

elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

A party "must state with particularity the circumstances constituting fraud." Fed. R. Civ.P. 9(b). That fraud must be pled with particularity "ensures that plaintiffs do their homework before filing suit and protects defendants from baseless suits that tarnish reputations." *Pirelli Armstrong Tire Corp. Retiree Med. Ben. Trust v. Walgreen Co.*, 631 F.3d 436, 439 (7th Cir. 2011). The requirement is not rigid, and what must be alleged will vary depending on the facts of the case. *Id.* at 442. The heightened pleading standard applies to all *allegations* of fraud (such as a misrepresentation), not merely *claims* labeled fraud. *Id.* at 447.

## **DISCUSSION**

Kraft urges the Court to dismiss Plaintiffs' class-action complaint for three reasons. First, Kraft argues that the ICFA does not apply to Plaintiffs injured outside of Illinois. Second, Kraft argues Plaintiffs lack standing to seek injunctive relief for their claims. Third, Kraft argues Plaintiffs have failed to allege an actionable misrepresentation. The Court addresses each argument in turn.

**I.     Claims Under the Illinois Consumer Fraud Act**

Kraft argues that nonresident Plaintiffs have no standing to assert claims under the ICFA. They contend that Capri Sun purchases by out-of-state putative class members have no connection to Illinois, and the fact that one of Kraft's two

5

headquarters is in Illinois is insufficient to confer ICFA standing on nonresident Plaintiffs. Plaintiffs concede that several factors weigh against the ICFA reaching their claims, but argue that Illinois is the location of Kraft's headquarters, it is where the deceptive claims were made, and the complaints and profits ensuing from the misrepresentation flowed back to Illinois. Plaintiffs assert that this is sufficient for the ICFA to reach their claims. Kraft replies that the complaint contains no factual allegations supporting Plaintiffs' argument about the flow of complaints and profits ensuing from the misrepresentation. The Court agrees with Kraft.

Illinois statutes usually have limited territorial reach. The ICFA is no exception, and it does not "apply to fraudulent transactions which take place outside Illinois." *Avery v. State Farm Mut. Auto. Ins. Co*., 835 N.E.2d 801, 853 (Ill. 2005). In *Avery*, the Supreme Court of Illinois considered whether the ICFA applied to an insurance fraud claim based on alleged misrepresentations made by an Illinois insurer in four separate documents that the plaintiffs received at various times and locations throughout their course of dealings with the defendant. *Avery*, 835 N.E.2d at 853. The *Avery* court acknowledged that "it can be difficult to identify the situs of a consumer transaction when . . . the transaction is made up of components that occur in more than one state." *Id*. In such cases, the *Avery* court instructed courts to consider "[t]he place of injury or deception," among other factors, to decide whether "the circumstances relating to the transaction occur primarily and substantially" in Illinois. *Id*. at 854. Accordingly, a

nonresident plaintiff has standing under the ICFA where "the circumstances that relate to the disputed transaction," including the place of injury or deception, "occur[ed] primarily and substantially in Illinois.'" *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009) (quoting *Avery*, 835 N.E.2d at 853–54).

When determining whether a nonresident plaintiff may bring an ICFA claim, courts engage in a highly fact-bound inquiry that considers several factors including: (1) the plaintiff's residence; (2) the defendant's place of business; (3) the location of the relevant item that is the subject of the disputed transaction; (4) the location of the Plaintiff's contacts with the defendant; (5) where the allegedly deceptive statements were made; (6) where payments for services were to be sent; and (7) where complaints about the goods or services were to be directed. *See Crichton*, 576 F.3d at 396; *see also The Clearing Corp. v. Fin. and Energy Exch. Ltd.*, 2010 WL 2836717, *6 (N.D. Ill. 2010) (*citing Avery*, 296 Ill.Dec. 448, 835 N.E.2d at 854–855); *Haught v. Motorola Mobility, Inc.*, 2012 WL 3643831, at *3 (N.D. Ill. 2012).

Unlike *Avery* where the defendant made the alleged misrepresentations throughout its course of dealing with plaintiffs, the misrepresentations alleged here were made on product labels during straightforward retail purchases across the nation. Plaintiffs argue that the deception occurred in Illinois because the scheme allegedly originated here. This allegation is insufficient to show that the misrepresentation occurred in Illinois. *Haught*, 2012 WL 3643831 at *4 (finding the fact that scheme

7

allegedly "emanated" from Illinois was insufficient to allow ICFA claims by nonresident) (internal citations omitted). Moreover, Kraft correctly points out that the complaint does not contain any allegations to support Plaintiffs' argument that profits or complaints that ensued from the alleged misrepresentation flowed back to Illinois. As such, the Court finds that Plaintiffs failed to allege that the situs of the transactions at issue occurred "primarily and substantially" in Illinois. *Avery*, 835 N.E.2d at 853. Accordingly, the Court will dismiss Count I on behalf of the nonresident Plaintiffs for lack of standing under the ICFA.

## II. Injunctive Relief Under Section 349 of the NY GBL

Kraft argues that Plaintiffs do not have standing to seek injunctive relief because they already know that Capri Sun contains citric acid and they are, therefore, unlikely to be harmed again. Plaintiffs respond that if Kraft were correct, consumer protection statutes such as the ICFA could never be invoked to enjoin deceptive practices because a complaining consumer's standing would dissipate the moment she discovers the alleged deception. The Court agrees with Kraft.

To establish standing to seek injunctive relief, Plaintiffs must allege not only "past exposure to illegal conduct" but also that such conduct is accompanied either by "continuing, present adverse effects," *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974), or, more relevant to this case, "a sufficient likelihood that [plaintiff] will again be wronged in a similar way," *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). The Seventh

8

Circuit has held that a plaintiff who merely alleges past harm by a deceptive sales practice faces no real and immediate threat that the same practice will deceive him after he becomes aware of the deception, and he is therefore not entitled to pursue injunctive relief. *See Camasta v. Jos. A. Bank Clothiers*, 761 F.3d 732, 73435 (7th Cir. 2014); *see also In re Herbal Supplements Mktg. & Sales Practices Litig.*, 2017 WL 2215025, at *8 (N.D. Ill. 2017); *Ulrich v. Probalance, Inc.*, 2017 WL 3581183, at *7 (N.D. Ill. 2017) (citing *Lyons*, 461 U.S. at 102).

Courts in this district have interpreted *Camasta* to allow plaintiffs standing to seek injunctive relief where it is plausible that the plaintiff will purchase the product again. *See, e.g., Curran v. Bayer Healthcare LLC*, 2019 WL 398685, at *5 (N.D. Ill. 2019) (finding plaintiff alleged future harm sufficiently by expressing continued desire to purchase product if assured correct SPF rating is stated on packaging). But where the complaint failed to allege that the plaintiffs were likely to repurchase the products, courts concluded that plaintiffs had no standing to seek injunctive relief. *See, e.g., Bohn v. Boiron, Inc.*, 2013 U.S. Dist. LEXIS 107928, *711 (N.D. Ill. 2013) (finding plaintiff did not have standing where she alleged that she "would not have purchased Defendants' Product" had she known the truth about its misrepresentations); *Mednick v. Precor, Inc.*, 2016 WL 5390955, at *9 (N.D. Ill. 2016) ("While it is desirable that Precor's prospective customers not be deceived by the company's allegedly false

9

advertising, the named Plaintiffs 'cannot rely on the prospect that other consumers may be deceived' to boost their own standing.").

The complaint, in this case, alleges that "Plaintiffs and Class members did not know, and had no reason to know, that the Products were misbranded and misleading as set forth herein, *and would not have bought the Products had they known the truth about them.*" 1:18-cv-07148, Dkt. 22 at ¶ 53 (emphasis added). Given this allegation, the Court finds it implausible that the Plaintiffs would again purchase the products at issue here. Thus, Plaintiffs have not alleged "a sufficient likelihood that [they] will again be wronged in a similar way," *Lyons*, 461 U.S. at 111 (1983). The Court accordingly will dismiss Count II for lack of standing to seek injunctive relief.

### III. NY GBL § 350 and Common-Law Fraud

New York's General Business Law ("NY GBL") § 350 states that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." To state a claim under the NY GBL § 350, a plaintiff must allege that defendant engaged in "(1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). Similarly, to state a claim for common-law fraud plaintiff must allege facts showing defendant made "(1) material representations of past or existing fact, (2) that were false, (3) made with knowledge of their falsity or in regardless disregard

10

thereof, (4) and justifiably and detrimentally relied on by the Plaintiffs." *Clark v. Integrity Financial Group, Inc.*, 2002 U.S. Dist. LEXIS 14708 (S.D. Ind. June 25, 2002).

Plaintiffs allege that Capri Sun contains industrially manufactured citric acid, and industrial citric acid is artificial because it is usually produced through the industrial fermentation process. Kraft argues Plaintiffs' insufficiently allege that Kraft's statements that Capri Sun contains "no artificial preservatives" are false or misleading. Kraft contends these allegations are insufficient to link fermented citric acid to that used in Capri Sun. The Court agrees.

Plaintiffs' allegations detail the practices commonly used to manufacture citric acid throughout the industry before concluding: "Thus, Defendant's citric acid is artificial." That is too great of an inferential leap. To satisfy the pleading standards, Plaintiffs need to draw a connection between the common industry practice and the actual practice used by Kraft. Even drawing all reasonable inferences in the Plaintiffs' favor, the complaint fails to draw this nexus, and the Court cannot draw it for Plaintiffs. Because Plaintiffs' allegations do not link the allegedly artificial citric acid to the actual citric acid used by Kraft, Plaintiffs have failed to allege sufficient facts showing that Kraft's "no artificial preservatives" statement was false. Therefore, the Court will dismiss Counts III and IV.

## **CONCLUSION**

For the reasons mentioned above, the Court grants the Defendants' motion to dismiss. It is so ordered.

Dated: 10/10/2019

_____

Charles P. Kocoras
United States District Judge